UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CLARK COUNTY SCHOOL DISTRICT,<br><br>                             Plaintiff(s),<br><br>       v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>                             Defendant(s). | Case No. 2:13-CV-1100 JCM (PAL)<br><br>ORDER |

Presently before the court is plaintiff Clark County School District's (hereinafter "plaintiff") motion to certify questions to the Nevada Supreme Court, or in the alternative, motion to reconsider. (Doc. # 60). Defendant Travelers Casualty and Surety Company of America (hereinafter "defendant") filed a response, (doc. # 63), and plaintiff filed a reply, (doc. # 64).

**I.    Background**

In 2007, plaintiff determined that many of its elementary schools required modernizations, including changes to heating, ventilating, and air conditioning ("HVAC") systems. (Doc. # 9). In early 2010, plaintiff began advertising and accepting bids to complete the projects. (Doc. # 9). Pursuant to Nevada Revised Statute 339.025, the contracts for the projects required performance bonds to protect against contractor default. *See* Nev. Rev. Stat. 339.025.

Big Town Mechanical ("BTM") submitted the lowest bids for all fifteen school projects. (Doc. # 9). Plaintiff awarded the contracts to BTM. (Doc. # 9). BTM then secured performance bonds for each project with defendant. (Doc. # 9). The bonds incorporate the terms of the contracts, including liquidated damage and warranty provisions. (Doc. # 9). Such performance

**James C. Mahan**
**U.S. District Judge**

1  bonds obligate defendant to arrange for completion or correction of any projects upon default by
2  BTM.  (Doc. # 9).
3      In fall 2010, plaintiff declared BTM in default on certain project obligations.  (Doc. # 9).
4  In or around May 2013, BTM filed for chapter 7 bankruptcy protection.  (Doc. # 9).  BTM
5  eventually defaulted on all projects.  (Doc. # 9).  Defendant then refused to fulfill its duties under
6  the bonds, and the project work remained unfinished.  (Doc. # 9).
7      On June 21, 2013, plaintiff filed the instant action.  (Doc. # 1).  On August 19, 2013,
8  plaintiff filed an amended complaint alleging five causes of action: (1) mandatory injunction to
9  compel specific performance; (2) breach of contract; (3) contractual breach of the covenant of
10 good faith and fair dealing; (4) tortious breach of the covenant of good faith and fair dealing; and
11 (5) declaratory relief.  (Doc. # 9).  On September 6, 2013, defendant filed an answer to plaintiff's
12 amended complaint.  (Doc. # 10).
13     On October 10, 2014, defendant filed a motion for partial judgment on the pleadings as to
14 plaintiff's fourth claim for tortious breach of the covenant of good faith and fair dealing.
15 Defendant argued that a surety cannot be held liable for tortious bad faith under Nevada law.  (Doc.
16 # 36).
17     On January 12, 2015, the court granted defendant's motion, dismissing plaintiff's fourth
18 cause of action.  (Doc. # 59).  Plaintiff then filed the instant motion.

**II.     Legal Standard**

*a.   Motion to certify*

The Nevada Rules of Appellate Procedure provide that the Supreme Court of Nevada has the power to answer "questions of [state] law . . . which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of [Nevada]."  Nev. R. App. P. 5(a).

The Nevada Supreme Court "may answer questions of law certified [] by a federal court when (1) [the] answers to the certified questions may be determinative of part of the federal case, (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions

**James C. Mahan**
**U.S. District Judge**

- 2 -

will help settle important questions of law. *Hartford Fire Ins. Co. v. Tr. of Const. Industry*, 208 P.3d 884, 888 (Nev. 2009).

Where the question does not impact the merits of a claim pending before the certifying court, the question should not be certified to the Supreme Court. *See* Nev. R. App. P. 5(a) (requiring that certified question be "determinative"); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.2d 1161, 1164 (Nev. 2006) (declining to answer certified questions where "answers to the questions posed [] would not 'be determinative' of any part of the case"). "The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

Federal courts have discretion to certify questions of state law. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "Resort to certification is not mandatory where state law is unclear on a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (*citing Lehman Bros.*, 416 U.S. at 390-91). Generally, "[w]hen a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

Further, a federal court may decline to certify a question where controlling precedent is available for guidance. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1041 (9th Cir. 2014); *see also Kehoe v. Aurora Loan Servs., LLC*, No. 3:10-cv-256-RCJ-RAM; 2010 WL 4286331, at *11 (D. Nev. Oct. 20, 2010) (declining to certify question to Nevada Supreme Court where statutory language was sufficiently clear for the court to apply).

Finally, a party must show "particularly compelling reasons" for certification when that party first requests it after losing on an issue. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) ("Ordinarily such a movant should not be allowed a second chance at victory when, as here, the district court employed a reasonable interpretation of state law.").

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

b. *Motion to reconsider*

A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); Fed. R. Civ. P. 60(b). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

c. *Tortious bad faith*

Claims for tortious breach of the implied covenant of good faith and fair dealing arise only in cases in which a special relationship exists. *Ins. Co. of the West v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006); *see also Aluevich v. Harrah's*, 660 P.2d 986, 987 (Nev. 1983) (affirming district court finding that commercial lessee lacks tortious bad faith claim against lessor); *U.S. Fidelity v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975) (recognizing tortious bad faith cause of action of insured against insurer).

"A special relationship is characterized by elements of public interest, adhesion, and fiduciary responsibility." *Gibson Tile*, 134 P.3d at 702 (internal quotation marks and citation omitted). Tort liability for bad faith is intended to remedy "vastly superior bargaining power," particularly in the insurance industry. *Id.*; *see also Aluevich*, 660 P.2d at 987 (refusing to allow tortious bad faith claim against lessor where plaintiff lessee was "experienced businessperson").

The Nevada Supreme Court has declined to extend this liability to sureties. *Gibson Tile*, 134 P.3d at 702 ("[A] suretyship relationship is not a special relationship giving rise to the tortious breach of good faith and fair dealing . . . ."); *Great Am. Ins. v. Gen. Builders*, 934 P.2d 257, 263 (Nev. 1996) ("[T]he parties, both experienced commercial entities represented in the present transaction by professional and experienced agents, were never in inherently unequal bargaining positions.").

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

### III. Discussion

*a. Motion to certify*

Through the instant motion, plaintiff asks the court to certify the following question of law to the Nevada Supreme Court: "Whether, under any set of factual circumstances, a public entity obligee may bring a claim for tortious breach of the covenant of good faith and fair dealing against its surety." (Doc. # 60).

This question is dispositive of one of plaintiff's claims, and is therefore determinative of part of the case as required for certification under Nevada law. *See Hartford Fire Ins. Co. v. Tr. of Const. Indus.*, 208 P.3d 884, 888 (Nev. 2009); *Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006).

Plaintiff argues that this question is an issue of first impression in Nevada, as the Nevada Supreme Court has not directly addressed whether an obligee may sue a surety for tortious bad faith. (Doc. # 60). In ruling on defendant's motion for judgment on the pleadings, the court interpreted the relevant case law and concluded that an obligee may not bring a tortious bad faith claim against a surety in Nevada. (Doc. # 59).

The Nevada Supreme Court has held in two prior decisions that bad faith claims against sureties are not maintainable. *See Ins. Co. of the West v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006); *Great Am. Ins. v. Gen. Builders*, 934 P.2d 257, 263 (Nev. 1996). Notably, those cases explicitly discussed the viability of tortious bad faith claims brought only by principals and not obligees. However, in its order granting defendant's motion for partial judgment on the pleadings, the court found this precedent instructive and ruled that the instant tortious bad faith claim by an obligee against a surety is barred as a matter of law.

While *Gibson Tile* addressed the particular circumstances of a principal-surety tortious bad faith claim, the court finds the Nevada Supreme Court's holding in that case persuasive for two reasons. First, the *Gibson Tile* court utilized broad language, stating generally, "[w]e have declined to extend tort liability to a surety for the breach of the good-faith covenant," under a heading that read, "[a] surety cannot be liable for the tortious breach of the covenant of good faith and fair dealing." *Gibson Tile*, 134 P.3d at 702.

James C. Mahan
U.S. District Judge

- 5 -

Second, the *Gibson Tile* court's reasoning for refusing to apply tortious bad faith claims to sureties is equally applicable here. In that case, the court focused on the absence of a special relationship in the surety context, noting that "a special element of reliance" and "vastly superior bargaining power" were not present. *Id.*

In the instant motion, plaintiff contends that *Great American* and *Gibson Tile* impliedly support tortious bad faith claims by obligees against sureties. In support of this argument, plaintiff cites the *Great American* court's explanation that the principal-surety relationship is unlike insurance because the principal obtained the bonds for the obligee's security, not its own. *Great American*, 934 P.2d at 263.

Plaintiff reads this discussion to imply that the obligee-surety and insured-insurer relationships implicate the same policy concerns, such that the obligee could potentially be entitled to bring a tortious bad faith claim. (Doc. # 60). Plaintiff also cites a nearly identical passage in *Gibson Tile* for the same proposition. *See Gibson Tile*, 134 P.3d at 702.

The court disagrees with plaintiff's reading of those passages. The court understands the above discussions as the Nevada Supreme Court's attempts to clarify its reasoning for rejecting tortious bad faith claims against sureties. The fact that a principal obtained the bonds pursuant to a statutory requirement for the obligee's benefit supported the court's conclusion that the principal-surety context did not implicate public policy concerns. *Id.* at 702.

Further, plaintiff suggests that by referencing obligees, the Nevada Supreme Court implicitly recognized the viability of their tortious bad faith claims. However, it is much more plausible that the court would have made such a distinction explicitly at this point, if one were intended. By contrast, reading these cases to bar all tortious bad faith claims against sureties conforms with the Nevada Supreme Court's broad language and reasoning presented in *Gibson Tile* and *Great American*.

As the Nevada Supreme Court has explained, surety bonds are distinguishable from insurance contracts in a number of ways. First, surety bonds present a unique tripartite relationship not present in the insurance context. Second, unlike in cases of insurance, surety bonds are by no

**James C. Mahan**
**U.S. District Judge**

- 6 -

means "adhesion contracts." In the instant case, plaintiff and BTM negotiated a contract, and those contractual terms were incorporated into the surety bonds at issue.

The pleadings provide no indication that plaintiff was presented with a "take it or leave it" situation. Plaintiff possessed the bargaining power to negotiate the damages provisions of its contracts with BTM. By including liquidated damages in the contracts, plaintiff anticipated the damages that it would incur should BTM default.

While the obligee is at risk when a surety fails to fulfill its obligations, this alone does not prove that a tortious bad faith claim is appropriate. Indeed, the obligee may have an even weaker argument than the principal to sue a surety for tortious bad faith, as the obligee was not even a contracting party to the bonds obtained by the principal. It is therefore difficult for the obligee to argue that bargaining power was unequal, as an insured may do in the insurance context.

Tortious breach of the implied covenant of good faith and fair dealing is a cause of action reserved for rare circumstances. The Nevada Supreme Court has repeatedly clarified that this cause of action is narrow in scope. *See Gibson Tile*, 134 P.3d at 461-62; *Aluevich v. Harrah's*, 660 P.2d 986, 987 (Nev. 1983) (noting that tortious bad faith claim "has mainly been implied in contractual relations which involve a special element of reliance . . . where one party has traditionally held *vastly superior bargaining power*") (emphasis added).

Further, surety bonds and insurance policies serve wholly different purposes. While an insurer promises to protect an individual in the case of an accident or disaster, a surety simply lends its credit and agrees to step in where the principal defaults on its contract. This is not a fiduciary relationship, and therefore does not present the same concerns as the insured-insurer relationship. *See Gibson Tile*, 134 P.3d at 703 (holding that fiduciary duty instruction in principal-surety dispute was erroneous because "a surety is not held to owe the same fiduciary duty to its principal" as an insurer owes to its insured).

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

Moreover, as the parties have recognized through prior motions, the contracts at issue provide for liquidated damages in cases of delay.[1] Where a principal or surety fails in its duties, the obligee may obtain a replacement contract and sue for damages.

Plaintiff argues that tortious bad faith claims are necessary to coerce sureties into fulfilling their bond obligations. This argument is unpersuasive. The court finds that in the instant situation, contract law provides an adequate deterrent without a tort cause of action. The liquidated damages provision and other contract remedies are sufficient to discourage nonperformance by sureties.[2]

The Nevada Supreme Court had ample opportunity in *Gibson Tile* and *Great American* to explicitly distinguish bad faith claims by principals and obligees. It did not do so, instead broadly holding that sureties may not be liable for tortious bad faith. Plaintiff's arguments for a narrower holding do not comport with the language of those decisions.

Further, while California law is not controlling in this jurisdiction, the court properly considered *Cates Construction, Inc. v. Talbot Partners*, 980 P.2d 407 (Cal. 1999), in interpreting Nevada law. As plaintiff notes, in deciding whether to certify a question, a federal court may consider "whether law from other states is instructive." *Kremen v. Cohen*, 325 F.3d 1035, 1037-38 (9th Cir. 2003). Nevada courts often look to California law, particularly in the bad faith setting. *See Landow v. Med. Ins. Exch. of Cal.*, 892 F. Supp. 239, 240 (D. Nev. 1995) (considering California law when resolving issue of first impression in bad faith context).

---

[1] Plaintiff previously moved for partial summary judgment, asking the court (1) to hold that the liquidated damages clauses in the contracts at issue are enforceable, (2) to recognize defendant's liability for liquidated damages, and (3) awarding liquidated damages. (Doc. # 37). In that motion, plaintiff represented that "each of the subject Contracts contains a liquidated damages provision designed to compensate [plaintiff] for any delay by BTM in completing the HVAC renovations." (Doc. # 37).

[2] Further, as defendant persuasively argues, the pressure of tort claims on sureties could actually have an adverse effect on the feasibility of the surety bond system. Namely, the threat of a tortious bad faith claim could pressure sureties into performing even where default by the principal is unclear, making sureties unwilling to secure contracts or driving up the prices of surety bonds.

**James C. Mahan**
**U.S. District Judge**

Overall, the court reads *Great American* and *Gibson Tile* to provide sufficiently clear guidance regarding the general viability of tortious bad faith claims against sureties. Based on the foregoing, the court will deny the request for certification.

The court finds no compelling reason to certify the instant question. The case law at issue is sufficiently clear regarding bad faith claims against a surety. *See Bank of the West v. Great Falls Ltd. P'ship*, No. 2:09-cv-388-JCM-RJJ, 2012 WL 2415519, at *3 (D. Nev. June 26, 2012) (denying request for certification because statutes at issue were sufficiently clear and Nevada Supreme Court had addressed issue in prior case). As a result, the court does not believe that this is an issue of first impression necessitating guidance from the Nevada Supreme Court.

Additionally, in deciding whether to certify a question, the court may consider whether certification would aid in preserving time, money, and resources. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984). These considerations weigh against plaintiff here, as the court has already considered and ruled on the parties' arguments in dismissing plaintiff's bad faith claim on the pleadings. *See Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1227 (D. Nev. 2008) (denying certification on these grounds where the parties had fully briefed the issues and the court had ruled on them).

Finally, to the extent that plaintiff's motion to reconsider constitutes its first proper request for certification, plaintiff fails to show particularly compelling reasons to certify.[3] *See Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) (holding that party making initial request to certify after losing on an issue must show particularly compelling reasons for certification).

---

[3] The court believes that this standard is likely inapplicable in the instant case. In plaintiff's response to defendant's motion for judgment on the pleadings, plaintiff stated: "If the Court has the slightest doubt that the cause of action should be sustained and [defendant's] motion denied, the matter should be certified to the Nevada Supreme Court." (Doc. # 40). Defendant argues that this was not really a request, and notes that plaintiff did not file a motion for certification at that time. However, other courts in this jurisdiction have suggested that a request under this standard may not require a motion. *See Carolina Cas. Ins. Co. v. McGhan*, 572 F.Supp.2d 1222, 1226 (D. Nev. 2008) ("Defendants did not request certification *or suggest that certification may be appropriate*.") (emphasis added). Regardless, the court finds that certification is not warranted, even without imposition of this higher burden.

**James C. Mahan**
**U.S. District Judge**

- 9 -

1    For the foregoing reasons, plaintiff's motion to certify questions to the Nevada Supreme
2 Court will be denied.
3    *b.  Motion to reconsider*
4    In the alternative, plaintiff asks that the court reconsider its January 12, 2015, order
5 granting partial judgment on the pleadings in this case. (Doc. # 60). Plaintiff argues that the court
6 should hold that a public entity obligee's claim for tortious breach of the covenant of good faith
7 and fair dealing is a viable cause of action under Nevada law. (Doc. # 60).
8    Plaintiff does not contend that any newly discovered evidence or intervening change in
9 controlling law applies here. Instead, plaintiff suggests that the court committed clear error or its
10 initial decision was manifestly unjust. *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263
11 (9th Cir. 1993); Fed. R. Civ. P. 60(b).
12    Plaintiff suggests that the court erroneously held that the Nevada Supreme Court's
13 decisions in *Great American* and *Gibson Tile* bar an obligee's tortious breach claim. (Doc. # 60).
14 According to plaintiff, "the Nevada Supreme Court specifically stated in those cases that its
15 decision only addressed whether a principal could sue its surety for tortious breach." (Doc. # 60).
16    Plaintiff does not present any new argument in support of its motion for reconsideration.
17 Instead, plaintiff restates the proposed reasoning from its response to defendant's motion for partial
18 judgment on the pleadings. Plaintiff also suggests that because a majority of courts nationally
19 have found their claim viable, Nevada would do the same.
20    As discussed above, the court finds Nevada law sufficiently clear regarding the viability of
21 the claim at issue. Accordingly, the court does not view plaintiff as showing clear error in this
22 case. For these reasons, the motion to reconsider will be denied.
23 . . .
24 . . .
25 . . .
26 . . .
27 . . .
28 . . .

**James C. Mahan**
**U.S. District Judge**

- 10 -

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to certify or reconsider, (doc. # 60), be, and the same hereby is, DENIED.

DATED April 8, 2015.

_____
UNITED STATES DISTRICT JUDGE