UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CLARK COUNTY SCHOOL DISTRICT, | Case No. 2:13-cv-01100-JCM-PAL |
| Plaintiff, | ORDER |
| v. | (Mot for Determination – ECF No. 133) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
| Defendant. | |

Before the court is Defendant Travelers Casualty and Surety Company of America Motion for Determination of Good Faith Settlement (ECF No. 133) which was referred to the undersigned for a decision pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4.  The court has reviewed the motion and attached supporting Affidavit (ECF No. 134), Plaintiff's Response (ECF No. 135), Defendant's Reply (ECF No. 136), and Exhibit to the Motion (ECF No. 140).

## **BACKGROUND**

The Complaint (ECF No. 1) in this case was filed June 21, 2013.  Clark County School District ("CCSD") filed an Amended Complaint (ECF No. 9) August 19, 2013, asserting claims for: (1) mandatory injunction to compel specific performance; (2) breach of contract; (3) contractual breach of the covenant of good faith and fair dealing; (4) tortious breach of the covenant of good faith and fair dealing; and (5) declaratory relief.  The complaint arises out of written contracts CCSD entered into in May 2010, with general contractor Big Town Mechanical, LLC ("BTM") to modernize heating ventilation and air conditioning ("HVAC") systems in 15 schools within the district.  Travelers Casualty and Surety Company of America ("Travelers") issued 15 separate performance bonds and payments bonds naming BTM as the principal and CCSD as the owner/obligee on the bonds.

1

BTM began work on the 15 school projects as specified in the contracts.  In late-2012 to early-2013, BTM submitted a series of claims to CCSD seeking payments for additional costs that BTM claimed to have incurred in connection with the 15 projects as a result of claimed unpaid contract balances, change order amounts, and extra work BTM was directed to perform. BTM also made delay and disruption claims against CCSD.  The aggregate amount of BTM claims totaled $6.5 million.

CCSD rejected all of BTM's claims and on May 14, 2013, BTM filed for bankruptcy protection.  In December 2013, CCSD and Travelers entered into a Takeover Agreement for Travelers to complete BTM's projects as surety.  Travelers entered into a contract with Sletten Construction of Nevada ("Sletten") to complete the projects, and paid Sletten approximately $5 million.

On July 3, 2013, the undersigned granted Travelers leave to file a counterclaim for breach of contract and contractual breach of the implied covenant of good faith and fair dealing.  The parties subsequently submitted a stipulation which the court approved to continue the discovery plan and scheduling order deadlines to allow for project completion on November 14, 2014 (ECF No. 48).  The court also approved a stipulation granting the parties' request to extend the discovery deadline to September 7, 2015 (ECF No. 56).

Travelers applied for and received permission from the U.S. Bankruptcy Court in this district to prosecute all of BTM's claims against CCSD related to the contracts and the project on May 19, 2014.

In an order (ECF No. 59) entered January 12 2015, the district judge granted CCSD's motion for partial summary judgment on the pleadings with respect to Travelers fourth claim for relief, tortious breach of the covenant of good faith and fair dealing.  The order denied CCSD's motion for partial summary judgment without prejudice and Travelers motion for a Rule 56(d) continuance as moot finding he could not conclude that CCSD was entitled to liquidated damages for all delays as a matter of law and that Travelers should be afforded an opportunity to complete discovery regarding the causes of delays at issue.

On October 19, 2015, after the close of discovery, CCSD filed a Motion in Limine to preclude Travelers from introducing evidence regarding certain counterclaims and defenses (ECF No. 114), a Motion for Partial Summary Judgment seeking a determination that BTM, and therefore Travelers, did not provide the required contractual notice of BTM's claims (ECF. No. 112), and a Motion for Partial Summary Judgment seeking a determination that Travelers' wrongful termination counterclaim is barred (ECF No. 113).  These motions are now fully briefed and under submission to the district judge.

In this case Travelers, standing in BTM's shoes, claims CCSD owes it approximately $6.5 million.  CCSD's pending motion for partial summary judgment seeks to strike the BTM claims and counterclaim on the grounds that Travelers may not recover as surety for BTM because BTM did not comply with the notice provisions of the contracts, and as a result, the claims are barred.  Travelers' counterclaim also asserts a wrongful termination claim asserting CCSD failed to comply with specific conditions precedent in the contract in order to properly terminate BTM.  Travelers argues that as a matter of law CCSD was required to terminate the contracts in order to assert a valid claim against Travelers' payment and performance bonds, and that because it did not do so, it does not have a valid claim against the bonds.  Travelers  seeks reimbursement from CCSD for the $5 million it paid Sletten.

On December 1, 2015, CCSD and Travelers mediated their disputes with the assistance of Floyd Hale, Esq. of JAMS.  The motion states the basic terms of the settlement are that Travelers will pay CCSD $5 million.  CCSD will keep possession of the approximately $600,000 in contract balance on the contracts.  CCSD will grant Travelers an assignment of "certain rights", and the parties give each other a full and final release of all claims on the projects.  At the time this motion was filed, the settlement agreement was being memorialized in a written document.

In the current motion, Travelers seeks a determination that the settlement reached with CCSD was made in good faith for purposes of NRS 17.245 which bars all claims against a settling Defendant for contribution and equitable indemnity.  Citing *The Doctor's Company*, 120 Nev. 644, 657, 98 P.3d 681, 690 (2004), Travelers acknowledges that as the moving party, it has

the burden of proving that the settlement was, in fact, reached in good faith,.  There, the Nevada Supreme Court held that "[a] settling defendant seeking protection from contribution and implied indemnity claims has the burden of proving that the settlement was in good faith." *Id.*

Travelers argues that applying the 5-factor test articulated by the Nevada Supreme Court in *Velsicol Chemical v. Davidson*, 107 Nev. 356, 811 P.2d 561 (1991), compels a determination that settlement was reached in good faith.  Specifically, the settlement amount is $5 million in exchange for a complete release and dismissal with prejudice of all claims that CCSD has with respect to the projects and the bonds Travelers issued.  In agreeing to this settlement, Travelers considered that the legal expenses were increasing, would likely increase and were expected to be substantial.  Additionally, Travelers assessed its risk on the motions filed by CCSD at the close of discovery.  At the time this motion was filed, expert reports and rebuttal reports were due.  Travelers determined that it had substantial litigation risks, and that the pending motions could be decided against it.  In assessing its litigation risks Travelers also acknowledged that it is difficult to prevail on its counterclaims based upon the BTM claims and wrongful termination of BTM.

Settlement proceeds go directly to CCSD as the sole Plaintiff in this matter.  Therefore, no allocation analysis is needed.  The total penal amount of Travelers' bonds varies from project to project from a low of $2,178,000, to a high of $3,288,000.  Thus, CCSD's claims do not exceed the penal amount of Travelers' bonds.  A summary of CCSD's damages claim by project is attached to the supporting affidavit of John Fouhy (ECF No. 134).  CCSD seeks to recover $11,463,209.85 from Travelers in this action.  Of that, $245,540.85 is a claim for direct costs and the balance of $11,217,750 are contractual liquidated damages claims.  In addition, CCSD seeks interest, and attorney's fees and costs.  A spreadsheet of the damages per project is attached as Exhibit A to the Fouhy declaration.

Turning to the fourth factor, both Travelers and CCSD are financially sound entities and could therefore bear the financial burden of continued litigation.  Finally, Travelers argues that this case has been hotly litigated for more than two years.  The parties have exchanged written discovery, produced in excess of 200,000 documents, and taken numerous depositions.  At the

time settlement was reached, more depositions were scheduled.  The settlement was reached through a formal settlement conference with a neutral, Floyd Hale, after extensive negotiations.  Finally, Travelers argues the settlement was not reached through collusion, fraud, or tortious conduct.  For these reasons, Travelers asks the court for a determination that the proposed settlement was made in good faith for purposes of NRS 17.245.

CCSD filed a Response (ECF No. 135) asserting it had no objection to the relief sought in Travelers' motion.  It agreed that on December 4, 2015, CCSD and Travelers reached a settlement in which Travelers agreed to pay it $5 million as compensation for numerous delays caused by BTM's failure to timely complete the HVAC renovations at 15 Las Vegas elementary schools.  In addition, Travelers agreed that CCSD would keep possession of approximately $600,000 in remaining contract balances for the projects.  Thus, the settlement is effectively $5.6 million from Travelers to CCSD.  Travelers has agreed to a full and final release of all of the counterclaims it has or may have against CCSD related to the projects, and CCSD has granted Travelers a full an final release of all of the claims CCSD has or may have against Travelers related to the projects.  CCSD also granted Travelers an assignment of certain rights.  CCSD's response indicated that a written settlement agreement was executed by the parties February 1, 2016, and on February 5, 2016, Travelers paid CCSD the agreed-upon $5 million settlement amount.  CCSD agrees that the settlement was reached in good faith.

Travelers filed a Reply (ECF No. 136) pointing out that CCSD does not oppose the relief sought.

## DISCUSSION

### I.      Magistrate Judge Jurisdiction for Good Faith Settlement Determination

Before addressing the merits of the motion, the court must determine whether a magistrate judge has jurisdiction to order that a settlement was made in good faith under NRS 17.245, which in turn prevents later claims for contribution and equitable indemnity.  Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) authorize a magistrate judge to enter orders in non-dispositive matters.  28 U.S.C. § 636(b)(1)(A) lists motions which may not be determined by a magistrate judge.  Any motion not listed generally falls within the

non-dispositive group of matters which a magistrate judge may determine.  Local Rule IB 1-3 provides: "A magistrate judge may hear and finally determine any pretrial matter not specifically enumerated as an exception in 28 U.S.C. § 636(b)(1)(A)."  A motion for finding of good faith settlement does not fall within the list of motions which may not be determined by a magistrate judge.  Accordingly, this Court has jurisdiction to issue an order on this matter.

## II.      Joint Motion for Finding of Good Faith Settlement

The settling parties seek a determination that the settlement among them was made in good faith.  NRS 17.245 states, in relevant part:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> …
>
> (b)  .  .  .  discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.

NRS 17.245(1).  Equitable indemnity is defined as "a right of indemnity that is created by the court rather than expressly provided for in a written agreement."  NRS 17.245(2).  The statute was enacted "to encourage settlements by discharging all liability for contribution by a settling tortfeasor to others upon a finding that the settlement was entered in 'good faith'."  *Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 631–32 (D. Nev. 2002) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 926 (D. Nev. 1983)).  Since a determination by the court that a settlement was made in good faith releases the settling parties from further contribution to the non-settling parties pursuant to NRS 17.245(1)(b), "the approving court must use its discretion to consider the fairness and overall appropriateness of the proposed settlement."  *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1060–61 (9th Cir. 2003) (citing *Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 563 (Nev. 1991)).

Under Nevada law, the determination of whether a settlement is in "good faith" under NRS 17.245 is "left to the discretion of the trial court based upon all relevant facts available."  *Velsicol*, 811 P.2d at 563.  The Nevada Supreme Court reviews the lower court's determination of good faith for abuse of discretion.  Otak Nevada, L.L.C., v. Eighth Jud. Dist. Ct. 312 P 3d 491, 496 (2013).  The district court abuses its discretion if substantial evidence does not support the

1  decision. *Id.*  Substantial evidence is defined "as that which a reasonable mind might accept as

2  adequate to support a conclusion." *Id.* (Internal citations and quotations omitted)

3      The Nevada Supreme Court has agreed that the factors discussed by this court in *In re*

4  *MGM Grand Hotel Fire Litigation*, 570 F. Supp. 913, 927 (D. Nev. 1983), may be among the

5  relevant facts a court may choose to consider in the exercise of its "considerable discretion." *The*

6  *Doctors Co. v. Vincent*, 98 P.3d 681, 686–87 (Nev.2004).  These factors include: (1) the amount

7  paid in settlement; (2) the allocation of the settlement proceeds among plaintiffs; (3) the

8  insurance policy limits of settling defendants; (4) the financial condition of settling defendant;

9  and (5) the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-

10  settling defendants. *In re MGM*, 570 F. Supp. at 927 (citing *Commercial Union Ins. Co. v. Ford*

11  *Motor Co.*, 640 F.2d 210 (9th Cir. 1981)).  However, Nevada law includes no requirement that a

12  court consider or limit its analysis to the *MGM* factors or hold a hearing before making a

13  determination of good faith.  *Velsicol*, 811 P.2d at 563 (expressly declining to adopt the

14  "California rule," contrary to this court's conclusion in *MGM* ).

15  **III.    ANALYSIS**

16      Here, BTM declared bankruptcy in the midst of completing 15 HVAC modernization

17  contracts for CCSD elementary schools.  Travelers stepped in as the surety issuing payment and

18  performance bonds, hired Sletten to complete the work and paid Sletten in excess of $5 million.

19  CCSD and Travelers now agree the projects are complete.    Before filing for bankruptcy

20  protection BTM submitted claims against CCSD for additional costs, unpaid contract balances,

21  and delay and disruption allegedly caused by CCSD totaling $6.5 million.  Travelers applied for

22  and received leave from the Bankruptcy Court to pursue BTM's claims against CCSD and filed a

23  counterclaim in this court to pursue those claims as well as a counterclaim for wrongful

24  termination of BTM's contract.  CCSD's claims against Travelers, standing in BTMs shoes,

25  sought to recover in excess of $245,000 in direct costs, attorneys' fees and in excess of $11

26  million in contractual liquidated damages.  After two years of protracted and expensive litigation

27  the parties successfully mediated their dispute with the assistance of Floyd Hale, Esq. of JAMS,

28

a highly skilled mediator with decades of construction litigation experience, and an impeccable reputation for his legal skills and integrity.

The parties' moving and responsive papers did not attach a copy of their settlement agreement. The court requested a copy of the executed agreement to examine settlement terms and evaluate whether any of the terms suggest evidence of fraud, collusion or tortious conduct designed to injure non-parties. The settlement agreement has now been filed on the docket as part of the public record. The court has now reviewed and considered the moving and responsive papers, and the parties written settlement agreement. Applying the Nevada Supreme Court's list of non-exhaustive factors for determining whether a settlement agreement was reached in good faith the court finds the settlement reached was a good faith settlement.

The amount of the settlement Travelers paid to CCSD was $5.6 million when the $600,000 CCSD retained in contract balances due BTM is considered. This represents slightly more than half of the amount CCSD sought in its lawsuit. The amount Travelers paid was slightly more than half the amount of its exposure given CCSD's contractual liquidated damages claim. In addition, Travelers paid in excess of $5 million to Sletten to complete the work on the projects. Travelers has therefore paid more than $11 million in connection with its obligations under its payment and performance bonds on the project, and released its rights with respect to the $600,000 in unpaid contract balances. Both sides acknowledge in their written settlement agreement that work on the projects is complete.

Settlement proceeds went solely to CCSD so allocation analysis does not apply. Both sides agree they are financially viable entities who could afford to continue to litigate this case to final resolution but determined in was in their respective best interests to avoid substantial additional litigation expenses to compromise their disputes. The settlement was reached after the close of discovery, and after CCSD filed potentially dispositive motions. Thus the parties were fully informed about the strengths and weakness of their claims and defenses. CCSD settled for less than it may have recovered at trial if successful without risking an adverse judgement for the $5 million Travelers paid to complete the projects, and Travelers $6.5 million counterclaim. Travelers acknowledged the difficulty of pursuing wrongful termination, delay and disruption

damages claims standing in the shoes of BTM which failed to complete the work and filed for bankruptcy protection.

Finally, the court requested a copy of the settlement agreement because the moving and responsive papers only summarized the terms of the agreement and did not specify what rights CCSD agreed to assign to Travelers.  The motion discloses that there is another case pending in this court arising out of claims BTM has against one of its subcontractors, FAST Systems Inc. who allegedly failed to complete its work on the projects.  Fidelity and Deposit Company of Maryland issued surety bonds on the project and Travelers has asserted claims against FAST and Fidelity is evaluating its legal rights with respect to other BTM subcontractors involved with the projects.

In the settlement agreement CCSD has agreed to the following assignment:

> (c)    Assignment.  In exchange for and effective ten (10) business days after Travelers' payment to CCSD of the Settlement Payment and retroactive to the Effective Date, CCSD assigns, transfers and conveys to Travelers all of CCDC's rights arising out of or related to the Contracts with BTM, the Projects, the BTM Claims on the Projects, and the Action (as well as all related damages in connection therewith), including but not limited to all direct costs, resultant damages, liquidated damages (including the LDs set forth in **Exhibit C**), interest and fee claims thereon.  The purpose of this assignment is to give Travelers the ownership of and the right to assert any and all claims that CCSD has asserted and/or could have asserted in any ongoing or future dispute/litigation that Travelers is or may eventually be involved in.  The Parties' agree that this assignment does not affect CCSD's ownership of the equipment and renovations that BTM installed/performed on the Projects.

This is standard assignment language intended to allow Travelers to assert any claims CCSD had and/or could have asserted against subcontractors on the projects.  Travelers received an assignment of rights allowing it to stand in the shoes of CCSD in any further dispute or litigation Travelers may be involved in arising out of the projects.  This is not a secret assignment and cooperation agreement in which nominally adverse parties covertly agree to pursue a common goal of establishing liability against other potentially liable parties. Nothing in the terms of the settlement agreement settlement suggest it is the product of collusion, fraud or tortious conduct designed to injure non-parties.

In short, the court finds the parties' settlement is fair and appropriate.

Accordingly,

9

1    **IT IS ORDERED** Defendant Travelers Casualty and Surety Company of America's

2    Motion for Determination of Good Faith Settlement (ECF No. 133) is **GRANTED.**

3        DATED this 18th day of August, 2016.

4

5        _____

6        PEGGY A. LEEN
         UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28